THACKER ET AL. *v.* BOARD OF TRUSTEES OF OHIO STATE
UNIVERSITY ET AL.

[Cite as Thacker v. Bd. of Trustees (1971),
29 Ohio Misc. 31.]

(No. 243560—Decided August 17, 1971.)

Common Pleas Court of Franklin County.

*Mr. William B. Singer,* for plaintiffs.
*Mr. Huntington Carlile,* for Ohio State University.
*Messrs. Caren, Lane, Huggard, Alton & Horst* and *Mr.
Jack R. Alton* and *Mr. Scott M. Knisley,* for defendant.

FLOWERS, J.   This matter comes on for decision of the
motion to dismiss as filed by defendants, The Board of
Trustees of The Ohio State University and the Ohio State
University Hospital, the pleadings, oral arguments of
counsel at scheduled hearing and supplemental memor-
anda.   Upon consideration thereof, the court finds said
motion is well taken as to these defendants and the same
is SUSTAINED, as falling within the case law of *Wolf* v.
*Ohio State University Hospital et al.* (1959), 170 Ohio St.
49, involving these same defendants.   That case has not
been modified nor overruled, nor has the Ohio General
Assembly subsequently enacted legislation authorizing tort
actions against these same defendants.
The syllabus of the *Wolf* case reads as follows:
"1. Under the provisions of Section 16, Article I of

the Constitution of Ohio, suits may be brought against the state in such courts and in such manner as may be provided by law.

"2. These provisions of the Constitution of Ohio are not self-executing.

"3. Under the provisions of R. C. 3335.03, the Board of Trustees of The Ohio State University is invested with the right of suing and being sued, and of contracting and being contracted with.

"4. The Ohio State University and The Ohio State University Hospital are instrumentalities of the state of Ohio and as such are not suable in tort until the General Assembly of Ohio enacts a statute determining the courts and the manner in which such suits may be brought against the state.

"5. Under the provisions of R. C. 3335.03, the General Assembly of Ohio has not authorized tort actions to be brought against the Board of Trustees of The Ohio State University."

Plaintiffs have urged that the concurring opinion of Judge Taft, and the subsequent opinion of *Hyde* v. *Lakewood*, 2 Ohio St. 2d 155, involving a municipal hospital, require a showing that these defendants were operating in a governmental capacity, as distinct from a proprietary capacity, before immunity can be claimed. Judge Taft, in his concurring opinion, did indicate that such question was not before the court, but concurred in paragraphs one, two and three of the syllabus and in the judgment. Any questions in this regard were resolved by the later case of *Schaffer* v. *Board of Trustees of Franklin County Veterans Memorial*, 171 Ohio St. 228, involving a county agency, in which the same argument was advanced. At pages 229-231 the following appears:

"Therefore, in the absence of statutory authorization, the state and its instrumentalities are completely immune from suit.

"This brings us to the question as to whether such immunity extends to a county.

"The sovereign immunity of counties was early recog-

nized in *Board of Commrs. of Hamilton County* v. *Mighels,* 7 Ohio St. 110, wherein the syllabus states:

" 'The board of commissioners of a county are not liable, in their quasi corporate capacity, either by statute or at common law, to an action for damages for injury resulting to a private party by their negligence in the discharge of their official functions.'

"Plaintiff urges that a county stands in the same position and is liable to the same extent as a municipal corporation. *In this regard, plaintiff fails to recognize that a county is a subdivision of the state, organized for judicial and political purposes. It is not a legal person or a separate political entity. A municipal corporation, on the other hand, is a corporation invested with certain powers of a private or proprietary nature.* These distinctions were well expressed by Judge Brinkerhoff in *Board of Commrs. of Hamilton County* v. *Mighels, supra,* 118, 119, which expressions were quoted as follows and approved by Turner, J., in *State, ex rel. Ranz,* v. *City of Youngstown,* 140 Ohio St. 477, 483:

" ' '* * * municipal corporations proper are called into existence, either at the direct solicitation or by the free consent of the people who compose them.

" 'Counties are local subdivisions of a state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them. The former organization is asked for, or at least assented to by the people it embraces; the latter is superimposed by a sovereign and paramount authority.

" 'A municipal corporation proper is created mainly for the interest, advantage, and convenience of the locality and its people; a county organization is created almost exclusively with a view to the policy of the state at large, for purposes of political organization and civil administration, in matters of finance, of education, or provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice. With scarcely an exception, all the powers

and functions of the county organization have a direct and exclusive reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy.' ''

"The General Assembly has clearly recognized the sovereign immunity of counties by enacting, pursuant to the provisions of Section 16 of Article I of the Ohio Constitution, R. C. 305.12, imposing liability on a county for negligence in failing to keep roads or bridges in repair. To this extent the sovereign immunity of a county has been abrogated.

"Judge Spear in *Board of County Commrs.* v. *Gates*, 83 Ohio St. 19, 30, clearly and succinctly stated the nature and the status of a county when he said:

" 'Another view would seem to be equally fatal to the claim of plaintiff in this case. We are dealing with a question of liability of a county, a claim to be made good, if at all, by taxation upon the property of the people at large. Now a county is not a body corporate but rather a subordinate political division, an instrumentality of government, clothed with such powers and such only as are given by statute, and liable to such extent and such only as the statutes prescribe. The board of commissioners acts in such matters as the construction of ditches in a political rather than a judicial capacity, and that body also in such action is clothed with such powers only as the statutes afford.' See, also, *State, ex rel. Godfrey, a Taxpayer,* v. *O'Brien, Treas.,* 95 Ohio St. 166, and *State, ex rel. Ranz,* v. *City of Youngstown, supra.*

"A county is purely a political subdivision, an agency or instrumentality of the state and is clothed with the same sovereign immunity from suit.

"Thus, in the absence of statutory authorization therefor, a county or its agencies are immune from suit for negligence." (Emphasis supplied.)

The same status was extended to a county hospital in *Wierzbicki* v. *Carmichael et al.,* 118 Ohio App. 239. It would be an anomalous situation to extend the rules of sovereign immunity to a county hospital and deny same to

a "state" hospital. Consequently, this court concludes that the status of these same defendants as instrumentalities of the State of Ohio, determined by court in the *Wolf* case, continues to the present, and the pronouncements of the *Lakewood* case are limited to municipalities and the fact situation of that case. A similar distinction was recognized in *Holt* v. *Cincinnati*, 4 Ohio App. 2d 119.

*Motion sustained.*